# CHARLESTON.

GARDNER'S ADM'R *v.* GARDNER'S HEIRS.

Submitted June 23, 1899—Decided December 9, 1899.

1. COMMISSIONER'S REPORT—*Exception—Appeal.*
   Where an exception is not taken in the court below to a commissioner's report, and the matter objected to might be affected by extrinsic evidence, the appellate court will not consider such objection.   (p. 372.)

2. DEBTS—*Priority—Postponement*
   Under section 25, chapter 85, and section 3, chapter 86, Code, it is error for the court to take a debt proved as a general debt against an estate, under the fourth clause of said section 25, out of said class, and postpone it to the payment of the other debts of the same dignity and class. The payment must be of all such debts *pro rata.*   (pp. 372, 373.)

Appeal from Circuit Court, Greenbrier County.

Action by M. M. McGrath, administrator of Mary Gardner, against John McDonald and others, heirs of decedent. From the decree, John McDonald appeals.

*Modified.*

L. J. WILLIAMS, for appellant.

GILMER & GILMER, for appellees.

McWHORTER, JUDGE:

Mary Gardner died seised of two pieces of real estate situate in the town of Ronceverte. On one of these lots was her dwelling house. They were valued together, on the assessor's books, at the sum of one thousand three hundred and seventy-five dollars. She left no personal property, and the estate was in debt. M. M. McGrath was appointed administrator, and filed his bill in the circuit court of Greenbrier County, against the heirs at law and creditors of the estate, so far as known, praying for the proper accounts to be taken, the dignity and priorities

of the liens and debts ascertained, and sale of the property to pay the debts, and for general relief.   Defendant John McDonald filed his answer, alleging that on or about the 5th of February, 1889, he rented rooms in the house owned and occupied by the deceased, Mary Gardner, and moved into same; that from the time he moved into the house with Mary Gardner he furnished means for the payment of taxes, purchase of lumber and material for repair and improvement of said property, including paints, paper, muslin, etc., for papering walls, etc.; that, being a lumber-man and carpenter, he did much of the work himself; that he furnished money, or in person paid bills for work, labor, materials furnished, taxes, and insurance, for the use and benefit of Mary Gardner and her estate; that said Mary Gardner was advanced in years, not strong physically; that he and his wife cared for and attended Mrs. Gardner from the time he moved into the house in 1889, until the death of Mrs. Gardner, in May, 1897; that as she grew older she required more waiting on and attention, and for the last two years she was at times quite a charge to defendants' wife, who was attentive, kind and, faithful to her; that, after deducting a fair and reasonable amount for rent from the amounts furnished and expended by him for the use and benefit of Mrs. Gardner, and at her request, she was justly due defendant at her death the sum of one thousand, four hundred and thirty-five dollars and eight cents; that said Gardner left personal estate of very little or no value, but was seised and possessed of a valuable house and lot in the town of Ronceverte, which he was entitled to have sold to satisfy his debt; and united in the prayer of the bill that the property be sold to pay his and other debts.   The cause was referred to a commissioner to take, state, and report an account, showing what property, real and personal, said Mary Gardner owned at the time of her death, with location and probable value of the real estate and any other matter to be specially stated deemed pertinent by the commissioner, or required by any party in interest, and that the creditors be convened by notice published and posted as required by law.   The commissioner, after giving the notices required, made up and returned his report, classifying the debts against the

estate, placing funeral expenses in class one, taxes in class two, and general claims against the estate in class three. Exceptions by John McDonald appear from the decree to have been taken to said report, but do not appear in the record to show the nature of them. The cause was heard July 6, 1898, and, it appearing that the exceptions to said report were not further insisted on by John McDonald, they were allowed to be withdrawn. "And, there now being no objection to said report of Commissioner Mays, the same, as modified by the court, is hereby confirmed in all things. And it appears from said report that John A. Handley is entitled to recover of the estate of Mary Gardner fitty-two dollars and ninety-one cents, and John Kimberlin is entitled to recover against said estate two dollars and two cents, both of equal dignity, and first-class debts; that the following persons are entitled to recover against said estate as second-class debts of equal dignity, as follows: D. A. Dwyer thirty-eight dollars and twenty-nine cents, S. H. Nickell eighteen dollars and fifteen cents, and the corporation of Ronceverte fifteen dollars and twenty-four cents, and Gilmer & Gilmer, attorneys for the administrator, fifty dollars; and the following persons are entitled to recover against said estate as third-class debts, as follows: C. H. Thompson five dollars and forty-two cents, H. B. Moore nine dollars and twenty-five cents, Greenbrier Meat & Fertilizer Co. five dollars and seventy-one cents, Charles F. Schlipp thirty-three dollars and twenty-six cents, Harrington Bros. fifty-two dollars and ninety-six cents, Patton & Co. one hundred and sixteen dollars and four cents, M. A. Gates one hundred and thirteen dollars and thirty-one cents; and that John McDonald recover against said estate nine hundred and four dollars and ten cents, as fourth-class debt,"—and went on to decree the sale of the real estate to pay such debts, with interest, in the order named. From this decree the defendant John McDonald appealed.

In the petition for appeal it is stated that in making his report the commissioner placed the claim of John McDonald in the third, or general, class, with the debts of like kind; that no one excepted to said report but petitioner, who did so "because the whole of his account was not al-

lowed, and by permission of the court he was allowed to withdraw his exception. This left the report without objection, and the same, as modified by the court, was confirmed in all things. Now, it is on account of this modification that petitioner complains. He assigns as error the modification of the report by taking the debt of McDonald from the third class among the general debts, and postponing it to the fourth class, because it has the same dignity as store accounts, doctor bills, etc., which were in the third class; and, second, that it was error to allow the taxes assessed against Mary Gardner for the years 1895 and 1896 as liens against her real estate, for that the failure of the sheriff to return the land delinquent in the time required by law discharged the land from the payment of said taxes." Section 25, chapter 85, Code, fixes the order in which the personal estate in the hands of the administrator shall be applied to the debts: First, to debts due the United States; secondly, taxes and levies assessed upon the decedent previous to his death; thirdly, debts due as personal representative, guardian, or committee, etc.; fourthly, all other demands ratably, except those in the next class; fifthly, voluntary obligations. And section 3, chapter 86, *Id.*, provides for the payment of decedents' debts out of the proceeds of real estate when sold for that purpose, which are assets in the hands of the administrator in the same order in which personal assets are directed to be applied. It is argued by appellees that one of two things may be inferred from the decree complained of, —either McDonald withdrew his exceptions, and consented to the entering of the decree deferring his debt to the other creditors, or the case was contested, and he was deferred by the court without his consent. McDonald had nothing to complain of in said report except where the commissioner reports as follows: "As to the items amounting to four hundred and seventy-eight dollars and eighty-seven cents in the account claimed by John McDonald, they were not allowed, because there is no evidence in support of this part of said account except the deposition of John McDonald. Therefore said items are stricken from the account." The commissioner had reported the claim of McDonald in the third class, among the general debts, to be "paid rata-

bly," where it belonged, if sufficiently proven,—which it appears to have been to the satisfaction of the commissioner, and also the court.

Appellees assign as error that McDonald was allowed anything in any class; that he was a member of the family of the deceased, Mrs. Gardner, and never expected anything. The items allowed by the commissioner seem to have been proven by the depositions of witnesses not interested, and the commissioner struck out so much of the account as was only supported by the testimony of McDonald. Appellees also claim that the court erred in decreeing anything in favor of Patton & Co., Harrington Bros., and M. A. Gates, or for taxes. The commissioner refers in his report in support of some of these claims to the depositions of witnesses taken before him, which do not appear in the record. "A commissioner's report, made in a cause rightly referred, on the face of which no error appears, will be presumed by the court as admitted to be correct by the parties, not only so far as it settles the principles of the account, but also in regard to the sufficiency of the evidence upon which it is founded, except in so far as to such parts thereof, as may be objected to by proper exceptions taken thereto before the hearing; and the court at the hearing is bound to observe this rule of equity practice." *Ward* v. *Ward*, 21 W. Va. 262; *Chapman* v. *Railroad Co.*, 18 W. Va. 184 (Syl., point 9); *McCarty* v. *Chalfant*, 14 W. Va. 531. "Where an exception is not taken in the court below to a commissioner's report, and the matter objected to might be affected by extrinsic evidence, the appellate court will not consider such objection." *Evans* v. *Shroyer*, 22 W. Va. 581. See, also, *Hyman* v. *Smith*, 10 W. Va. 298. As to the assignment of error in allowing the claim for taxes for the years 1895 and 1896, made by both appellant and appellees, claiming that the taxes had ceased to be a lien under the statute, and, not being levyable, could not be allowed as a claim against the estate, these taxes, under chapter 63, Acts 1897, may be levied and collected any time before the close of the calendar year 1899; hence are a legal and proper claim against the estate. Under section 25, chapter 85, and section 3, chapter 86, Code, it is error for the court to take a debt proved as a general debt against

an estate under the fourth clause of said section 25 out of said class and postpone it to the payment of the other debts of the same dignity and class. The payment of all such debts must be *pro rata*.

For the reasons stated herein, the decree complained of is reversed and set aside in so far only as it takes the claim of McDonald out of the third class, and said decree is amended by confirming said report of Commissioner Mays, which makes the claim of appellant, John McDonald, a part of class three, instead of class four, and to be so paid out of the proceeds of the sale of the real estate when the sale shall be made and confirmed; and in all other respects the decree is affirmed. The appellant, being the party sub-stantially prevailing, is entitled to recover his costs of this appeal, to be paid by the appellees out of the assets of the estate of Mary Gardner; and the cause is remanded for further proceedings to be had therein.

*Modified.*